Ann **PATTERSON,**
**Plaintiff/Respondent.**

v.

Victor E. **KATT,** Defendant/Appellant.

No. 56333.

Missouri Court of Appeals,
Eastern District,
Southern Division.

June 12, 1990.

Timothy N. Vujnich, St. Louis, for defendant/appellant.

Albert M. Spradling, Jr., Albert M. Spradling, III, Spradling & Spradling, Cape Girardeau, for plaintiff/respondent.

SMITH, Judge.

Defendant appeals from the judgment of the trial court, sitting without a jury, awarding plaintiff $65,833.47 plus interest in a breach of contract case. We affirm.

Plaintiff and defendant are sister and brother. Prior to 1970 they planned the opening of a nursing home in Perry County. Although the record does not specifically indicate their respective responsibilities one can reasonably infer that plaintiff would supply the expertise and leg-work and defendant would provide the money. Initially defendant owned 50% of the stock of the corporation, Ann Patterson Enterprises, Inc., which owned and operated the home and plaintiff and her husband each owned 25%. In May 1970, plaintiff and the corporation entered into a contract. That contract provided that plaintiff agrees ... "to perform professional services for the Corporation and to use her knowledge and experience in assisting the Corporation with the operation of a nursing home ..." That agreement recognized plaintiff's status as a free lance nurse anesthetist and her commitments to hospitals in that capacity. The contract further provided that plaintiff would be paid $10,000 per annum for each year she rendered service to the corporation. This compensation was to be paid to plaintiff at the rate of $10,000 per year commencing in 1980. The Board of Directors ... "shall determine whether [plaintiff] shall be employed in this capacity during each year of this Agreement." In the event the corporation desired to continue plaintiff's services after 1980 the rate of compensation was to be negotiated at that time. The contract was executed by plaintiff and by defendant as president of the corporation. Defendant was not, as an individual, a party to that contract.

In July 1970, plaintiff and defendant entered into a second contract to which the corporation was not a party. That contract in pertinent part provided:

"Whereas, First Party [defendant] has guaranteed to Second Party [plaintiff] payment for services in the amount of $10,000 as consultant to Ann Patterson Nursing Home, and

"Whereas, Second Party has entered into a contract with Ann Patterson Enterprises, Incorporated by which she will be paid $10,000 per year commencing in the year 1980, and thereafter for each year commencing in 1970 that she is employed by Ann Patterson Enterprises, Incorporated, prior to 1980, but that such contract is renewable by the corporation each year, and

"Whereas, First Party desires to guarantee to Second Party her consulting fee of $100,000.

"Now Therefore, it is agreed by and between the parties as follows:

"1. In consideration of Second Party performing her services as consultant in the construction of Ann Patterson Enterprises, Incorporated, First Party does hereby guarantee that he will pay to Second Party $100,000.00 being the

amount of her services as consultant, but that such sum shall be reduced by the amount of payments received by Second Party under her contract with Ann Patterson Enterprises, Incorporated by the terms of which contract she will receive $10,000 per year for each year that she is employed by Ann Patterson Enterprises, Incorporated prior to 1980. Said payments of $10,000 per year to be made after 1980.

"2. It is agreed and understood that the employment of Second Party under this contract is subject to the yearly renewal thereof by the Board of Directors of Ann Patterson Enterprises, Incorporated. In the event that Second Party shall be employed for the full term of 10 years and shall receive her pay therefor in the amount of $100,000 payable $10,000 per year commencing in 1980, then and in that event, this agreement shall terminate.

"3. In the event that Second Party shall not have earned the $100,000 under said contract, the Party of the First Part shall pay the balance guaranteed hereunder at the rate of $10,000 per year commencing in the year after 1980 that Second Party shall not be entitled to payment under her contract with Ann Patterson Enterprises, Incorporated. It is the intention of this agreement to guarantee to Second Party $100,000 and payable at the rate of $10,000 per year commencing in 1980, or in any year for 10 years thereafter that Second Party is not entitled to $10,000 under her contract with Ann Patterson Enterprises, Incorporated.

"4. First Party does hereby certify that the services already rendered by Ann Patterson as a consultant is good and adequate consideration for this agreement ..."

Plaintiff testified that this contract was executed in exchange for her and her husband's shares in the corporation. No evidence was adduced to support this testimony and the trial court did not make any finding about the existence of a stock transaction. It is clear from the testimony that at some stage defendant became the sole stockholder in the corporation.

In 1976, plaintiff's employment with the corporation was terminated by the corporation. Deferred compensation payments commenced in 1980 and continued into 1983. Plaintiff was paid approximately $35,000 pursuant to the contract. The corporation refused to pay approximately $25,000 more earned by plaintiff on the allegation that she had bought certain merchandise, through the corporation, for her own use. Plaintiff then brought this suit against defendant under the July contract seeking the difference between the amount paid to her by the corporation and $100,000.

■ The parties have throughout the litigation taken conflicting positions as to whether the July contract was a contract of conditional guaranty or suretyship. Plaintiff espoused the latter; defendant the former. The trial court found the contract to be an "absolute guaranty". We do not find it to be any of the three. There is a distinction between a guarantor and a surety. The latter is primarily liable to the obligee; the former is secondarily liable. *State ex rel United States Fidelity & Guaranty Co. v. Walsh*, 540 SW.2d 137 (Mo.App.1976) [2–4]. But both guaranty and suretyship involve the acceptance by the promisor of liability for the debt of another. Both involve a contract comprised of three parties a promisor, a creditor, and a debtor. *Id.; Beauchamp v. North American Savings Association*, 543 S.W.2d 536 (Mo.App.1976) [2–5]. The liability of the promisor arises because of the liability of the debtor and is determined by the liability of the debtor. The July contract here does not meet the criteria of either guaranty or suretyship.

■ The May contract clearly provided that the corporation could terminate plaintiff's employment after any year of the contract. It incurred no debt to plaintiff for any period of time, other than from year to year. Upon plaintiff's termination the corporation owed her only for the time she served as a consultant. The July contract recognized that situation. It did not,

and did not purport to, limit defendant's obligation to the corporation's indebtedness or liability to plaintiff. The July contract rather provided specifically that defendant promised to pay plaintiff $100,000 minus any amounts she received from the corporation. While the term "guarantee" is used in the contract it is used in the context of an independent promise to pay and not as a guarantee of the corporation's debt. *Bridge v. Welda State Bank,* 222 Mo.App. 586, 292 S.W. 1079 (1927) [2, 3]. The July contract was a separate independent contract between plaintiff and defendant and not a surety or guaranty contract. The trial court erroneously found the contract to be an "absolute guaranty".

However the trial court's result was correct and we review the result, not the path used to reach it. The question presented is whether there existed consideration for the contract. We conclude there was for two reasons.

■ First, the consideration recited in the contract is plaintiff's past services as a consultant. The evidence reflected that that service substantially pre-dated the execution of the May contract. She provided considerable time and effort in establishing the nursing home. The consideration for the May contract was plaintiff's future service to the corporation, not her past efforts. At one time she and her husband held half the stock of the corporation and ultimately that stock was owned by defendant. The evidence supports the conclusion that plaintiff and defendant were in agreement that plaintiff was entitled to $100,000 for her efforts, past, present and future in establishing, managing and making successful the nursing home. The July contract was the manifestation of that agreement. Such past services can provide consideration for a contract. *Wood v. Flanery,* 89 Mo.App. 632 (1901); *Thompson v. Schultz,* 222 Mo.App. 268, 296 S.W. 205 (1927) [8]; *Corbin on Contracts,* Vol. 1A, Sec. 233.

■ Secondly, we do not find that plaintiff's promise to perform services that she was already bound to perform under the May contract precludes those services from constituting valid consideration. The rule generally, and in Missouri, is that a "promise to perform a preexistent contractual duty of the promisor does not constitute consideration." *Koedding v. N.B. West Contracting Co., Inc.,* 596 S.W.2d 744 (Mo. App.1980) [4, 5]; *Gross v. Diehl Specialties International, Inc.,* 776 S.W.2d 879 (Mo. App.1989) [4–6]. Those cases, and others of the same type, involve cases where the promisee is bound by an earlier contract with the same party. That is not the situation here. Plaintiff's May contract was with the corporation. The July contract was with defendant. The applicability of the general rule where the contracts are with different entities has not been squarely addressed in Missouri. Where the issue has been considered in other states a split has developed. *McDevitt v. Stokes,* 174 Ky. 515, 192 S.W. 681 (1917) (applied the general rule); *Bailey v. Breetwor,* 206 Cal. App.2d 287, 23 Cal.Rptr. 740 (1962) (applied the general rule); *DeCicco v. Schweizer,* 221 N.Y. 431, 117 N.E. 807 (1917) (did not apply the general rule); *Joseph Lande & Son v. Wellsco Realty,* 34 A.2d 418 (N.J. 1943) (did not apply the general rule). The modern trend appears to be not to apply the general rule and to hold as valid consideration a promise to perform an existing obligation owed to a third party. *Corbin on Contracts,* Vol. 1A, Sec. 176. The reasons for the modern trend are twofold: (1) the promisor gets the exact consideration for which he bargains, one to which *he* previously had no right and one that he might never have received and (2) there are no sound reasons of social policy not to apply the usual rules of sufficiency of consideration as between the contracting parties. *Id. See also Restatement of Contracts,* Second, Sec. 73, comment d; *Willard v. Hobby,* 134 F.Supp. 66 (D.C.Pa. 1955) [1, 2]; *Morrison Flying v. Deming National Bank,* 404 F.2d 856 (10 Cir.1968) [4]. Under the circumstances present in this case the promise of plaintiff to perform her obligations under the May contract constituted sufficient consideration

for the July contract.[1] We find no error in the trial court's holding that defendant was bound by the terms of the July contract.

Defendant's third point is premised on the basis that plaintiff's misconduct resulted in the termination of her employment thereby "discharging the guarantee agreement" between plaintiff and defendant. We have already held that no guarantee agreement is involved. Further the independent contract between plaintiff and defendant did not condition defendant's obligation upon the reason why plaintiff did not receive the full $100,000 from the corporation. Defendant promised simply and clearly to pay plaintiff $100,000 less whatever amount she received from the corporation.

Defendant's final point is that the trial court erred in failing to give defendant credit for some amounts allegedly owing from plaintiff to the corporation. Defendant contends those claims were assigned to him from the corporation. The short answer is that no assignment was established by defendant nor does the evidence before us support the claims.

Judgment affirmed.

SATZ, P.J., and GRIMM, J., concur.

---

**1.** There was evidence to support a finding that the two contracts were intended to be part of the same transaction and should have been exe-
cuted contemporaneously. We need not address that further possibility to establish consideration.